UNITED STATES v. SOUTHERN PAC. R. CO. et al.

(Circuit Court, S. D. California. May 3, 1893.)

No. 184.

PUBLIC LANDS—RAILROAD GRANTS—SUIT TO DECLARE INVALID—ENJOINING THE CUTTING OF TIMBER.
   In a suit by the United States to invalidate a railroad company's claim to certain lands under a grant from congress, and to annul patents which had issued for part of the lands, as well as such contracts and deeds as had been made by the company to individual purchasers, who are made parties to the suit, an injunction to restrain the cutting of timber from the lands will not be awarded in advance of the hearing on merits, when the answer sets up facts which, if proved, may sustain the company's title.

In Equity. Suit by the United States of America against the Southern Pacific Railroad Company and others to declare invalid the company's claim to certain lands under the grant by congress, and to annul such patents as have been issued to the company for such lands, and such contracts and deeds therefor as have been made by the company to individual defendants. Complainant moves for a preliminary injunction to restrain the defendants from cutting down and carrying away any wood, trees, or timber from the lands in controversy. Motion denied.

The Attorney General and Joseph H. Call, Special Asst. U. S. Atty.

Joseph D. Redding, for defendants.

ROSS, District Judge. This suit was brought by the government against the Southern Pacific Railroad Company and a large number of individual defendants to obtain a decree declaring invalid that company's claim to a large number of sections of land under a grant made by congress to aid in the construction of its railroad, and to annul such government patents as have been issued to the company for such lands, and such contracts and deeds therefor as have been made by the company to the individual defendants, as well as a mortgage thereon alleged to have been made by the company to the defendants Mills and Lansing to secure the payment of certain indebtedness of the defendant company.

The lands involved in the suit are said by counsel to embrace about 900,000 acres, for 100,000 acres of which it is said the government has issued its patents, and much of which is held by the individual defendants under deeds or contracts of sale from the railroad company. The bill, as amended, alleges the complainant's original ownership of the lands in question; the grant by congress to the Atlantic & Pacific Railroad Company, of July 27, 1866; its acceptance of the grant, and the definite location of the line of road it was by congress authorized to build; the subsequent forfeiture of the granted lands by reason of the failure of the company to build the road; and the act of congress declaring the forfeiture for the benefit of the government. The amended bill also sets up the grant by congress to the Southern Pacific Railroad Company of March 3, 1871, and the various acts performed by that company thereunder. These grants are specifically referred to in the recent opinion of the supreme court in the case of the same title as the present, reported in 146 U. S. 570, 13 Sup. Ct. Rep. 152. The bill, as amended, also alleges, in substance, that the lands in controversy were within the limits of the Atlantic & Pacific grant, for which reason they were excluded from the grant to the Southern Pacific Company. It also alleges that the Southern Pacific Company claims to have pretended patents, issued by the United States, in due form of law, purporting to convey to that company a portion of the lands in suit, but which lands are unknown to complainant; that certain defendants, unknown to complainant, claim to be bona fide purchasers for value from the Southern Pacific Company, and

claim that their rights to certain tracts of the land in controversy are protected and confirmed by the act of congress approved March 3, 1887, entitled, "An act to provide for the adjustment of land grants made by congress to aid in the construction of railroads, and for the forfeiture of unearned lands, and for other purposes," (24 Stat. 556;) that the defendants Mills and Lansing have a mortgage or deed of trust from the defendant company covering, or purporting to cover, the lands in controversy, to secure the payment of certain indebtedness of the company to them as trustees, which mortgage is dated April 1, 1875, and executed in due form of law, and recorded in the counties in which the lands are situate; that the lands in question are naturally timbered and wooded lands, and have timber and wood thereon, and that the defendants, while claiming and pretending to own some interest in the lands at various times during the last five years, have unlawfully entered upon them, and chopped down the timber and trees thereon, and carried away such timber and trees, and converted the same to their own use, and are now removing from the lands wood so cut, and are threatening to chop down other trees on the lands, and unless enjoined will do so, to the great and irreparable injury of the complainant; that the defendant company, while pretending and claiming to own some interest in the lands in controversy, at various times during the past 10 years, to the complainant unknown, by pretended contracts and conveyances, has pretended to sell and convey large portions of the lands to the other defendants, the amount and description of which are unknown to complainant, and has thus realized from wood and timber on the lands large sums of money, which it has appropriated and converted to its own use.

The complainant asks, among other things, that the defendant company be required to state (1) the names of all of the pretended purchasers of said land, or any portion thereof, from the company; (2) the amounts and descriptions of lands so pretended to be sold; (3) that each and all of the defendants be required to state the nature and extent of their pretended claim or claims to said lands.

The respondents having answered the bill as amended, a reference was made to the master to take the testimony offered by the respective parties, which has been partly, but not wholly, done. At this stage in the proceedings an application is made on the part of the complainant, based upon the pleadings in the cause, for an injunction directed to all of the defendants, restraining them from cutting down or carrying away any wood, trees, or timber from the lands in controversy. Annexed to and made a part of the answer to the amended bill is a schedule showing the various portions of the lands in controversy, for which the defendant company has executed to the individual defendants deeds of conveyance and contracts of sale, amounting in the aggregate to many thousands of acres, under which, the answer avers, the respective parties claim and hold in good faith and for value. The answer puts in issue, among other things, all averments of the amended bill in respect to the location of the line of the Atlantic & Pacific Company, and sets up that that company never did definitely locate its line of road

west of the Colorado river. Of course, the court cannot now know what the evidence may show in regard to that fact. If established as alleged by the defendants, it may be that it would result that the lands in controversy never vested in the Atlantic & Pacific Company, but did pass to the Southern Pacific Company under the grant to it; for, in the late opinion of the supreme court respecting these grants, (146 U. S. 606, 13 Sup. Ct. Rep. 160,) it is said:

"The question is asked, supposing the Atlantic & Pacific had never located its line west of the Colorado river, would not these lands have passed to the Southern Pacific Company under its grant? Very likely that may be so. The language of the Southern Pacific Company's grant is broad enough to include all land along its line; and, if the grant to the Atlantic & Pacific Company had never taken effect, it may be that there is nothing which would interfere with the passage of the title to the Southern Pacific Company."

In view of the issues raised by the pleadings, and of the facts alleged by complainant and admitted by the defendants, that there are outstanding patents of the government purporting to convey to the defendant company large portions of the disputed premises, and that under and by virtue of those patents, and the grant from congress, the defendant company has, for value received, executed deeds of conveyance and contracts of sale to the individual defendants for a large part of such lands, under which such defendants possess and claim them in good faith, and for value paid therefor, I do not think an injunction should be awarded in advance of a hearing of the cause on the merits. The motion is accordingly denied.